**Dated October 07, 2003**



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| BETTY IRENE FRENCH, | * | Case No. 00-63163-JS |
| Debtor | * | Chapter 7 |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

| | | |
|---|---|---|
| GEORGE W. LIEBMANN, | * | |
| Trustee | * | Adv. Pro. No. 02-5757-JS |
| v. | * | |
| RANDY LEE FRENCH and DONNA MARIE SHAKA, | * | |
| | * | |
| Defendants | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### *MEMORANDUM OPINION DENYING THE DEFENDANTS'*
### *MOTION TO DISMISS*

This matter is before the Court upon the defendants' motion to dismiss the trustee's complaint to recover fraudulently transferred estate property. For the reasons set forth, the motion will be denied.

## FINDINGS OF FACT

On October 20, 2000, the Peninsula Bank filed the instant involuntary Chapter 7 bankruptcy petition in this Court against the debtor, Betty Irene French. On January 29, 2001, an order for relief was entered.

On August 22, 2002, George W. Liebmann, the Chapter 7 trustee, filed the instant complaint to avoid and recover an alleged fraudulent transfer made by the debtor to her son, Randy French, and her daughter, Donna Shaka, of certain real property located in Nassau in the Bahama Islands for no consideration within 12 months of the filing of the petition. The verified complaint alleged that the debtor did not list the property in her schedules or disclose its existence in her Statement of Affairs which she filed in her bankruptcy case. It further alleged that the property was purchased by the debtor and titled in her name by deed dated November 11, 1976, and recorded in the Bahamas; that she deeded the property to the defendants by deed dated December 1981 but not recorded in the Bahamian land records until June 21, 2000.

The trustee also filed a motion [P. 2] for temporary restraining order ("TRO"), which this Court granted by order [P. 3] entered August 26, 2002. The TRO prohibited

2

the defendants from transferring or encumbering the Bahamian property for a period of ten days.  On September 4, 2002, Judge E. Stephen Derby granted the plaintiff's request for a preliminary injunction [P. 7].

On October 10, 2002, the defendants filed the instant motion to dismiss [P. 9]. The motion was premised upon two legal arguments.  First, that the transfer in question occurred upon the date the unrecorded deed was executed, namely, December 1981, well outside the one-year period authorized for the recovery of fraudulent conveyances. Second, that Sections 548 and 550 of the Bankruptcy Code[1]

---

[1]Section 548(a) provides, as follows:

### § 548. Fraudulent transfers and obligations.

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;  or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation;  and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a).

Section 550 of the Code provides, as follows:

## § 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;  or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from–

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided;  or

(2) any immediate or mediate good faith transferee of such transferee.

4

(c) If a transfer made between 90 days and one year before the filing of the petition–

(1) is avoided under section 547(b) of this title;  and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may not recover under subsection (a) from a transferee that is not an insider.

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of–

(A) the cost, to such transferee, of any improvement made after the transfer, less amount of any profit realized by or accruing to such transferee from such property;  and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes–

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee;  and

5

providing for the recovery of fraudulent transfers, do not apply to property located outside the borders of the United States, citing *Maxwell Communication Corp. v. Barclays Bank (In re Maxwell Communication Corp.),* 170 B.R. 800 (Bankr. S.D. N.Y. 1994), *aff'd*, 186 B.R. 807 (S.D.N.Y. 1995), *aff'd,* 93 F.3d 1036 (2d Cir. 1996), and principles of International comity.

They also cited the case of *Kojima v. Grandote Intern., LLC (In re Grandote Country Club Co., Ltd.),* 252 F.3d 1146 (8th Cir. 2001), for the proposition that foreign law can never apply to property located in another country.

The defendants claim that there are no cases standing for the proposition that Sections 547 and 548 may be applied outside the United States to permit a trustee to recover property.

## CONCLUSIONS OF LAW

---

(E) preservation of such property.

(f) An action or proceeding under this section may not be commenced after the earlier of–

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 550.

To the extent that the motion to dismiss contests the date of the transfer, it must fail. "When ruling upon a motion to dismiss a complaint for failure to state a claim for which relief can be granted pursuant to Federal Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that may be drawn from them, in the light most favorable to the plaintiff." *Hemelt v. Pontier (In re Pontier)*, 165 B.R. 797, 798 (Bankr. D. Md. 1994). As stated in the complaint, the transfer in this case occurred on June 21, 2000, when the deed to the property was recorded among the Bahamian land records by the defendants. This comports with Section 548(d)(1) of the Bankruptcy Code, which provides that a transfer occurs "when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition."

The motion to dismiss could be denied without even addressing the extraterritoriality of the Bankruptcy Code, because the complaint does not allege that the transfer occurred outside this country, which the motion to dismiss assumes. Nevertheless, to the extent that the avoidance of the transfer at issue requires a

7

discussion of extraterritoriality, it is noted that the extraterritorial application of the Bankruptcy Code has been upheld in the context of the discharge injunction of Section 524, the worldwide effect of the automatic stay of Section 362, and the prohibition against litigation against a reorganized debtor after confirmation of a plan, pursuant to Sections 524 and 1141, considerations that have some application to the present controversy.

In *Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon),* 153 F.3d 991 (9th Cir. 1998), the Ninth Circuit held in a Chapter 7 case that the violation of the discharge injunction by a foreign creditor outside the United States was sanctionable by the U.S. Bankruptcy Court.  In so holding, the court stated:

> Congress has the unquestioned authority to enforce its laws beyond the territorial boundaries of the United States. *E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 248, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991) ("Aramco ").  Whether Congress has exercised that authority in a particular case is a matter of statutory construction. *Stegeman v. United States,* 425 F.2d 984, 986 (9th Cir. 1970)(*en banc*).   In construing a statute to ascertain Congress' territorial intent, we begin with the presumption that "the legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Foley Bros. v. Filardo,* 336 U.S. 281, 285, 69 S. Ct. 575, 93 L. Ed. 680 (1949)  With that presumption in mind, we analyze intent by first examining the language of the act for indications of intent regarding extraterritorial application.  *Aramco,* 499 U.S. at 248, 111 S. Ct. 1227.   In addition to the plain statutory words, intent may be discerned with reference to similarly-phrased legislation, *id.* at 250-51, 111 S. Ct. 1227, or the overall statutory scheme.  *Foley Bros.,* 336 U.S. at 286, 69 S. Ct. 575.  If these inquires are inconclusive, examination of

legislative history is appropriate. *Id.* Resort to administrative interpretations of the law may be employed if the legislative history is inconclusive. *Id.* at 286-88, 69 S. Ct. 575.

If Congressional intent concerning extraterritorial application cannot be divined, then courts will examine additional factors to determine whether the traditional presumption against extraterritorial application should be disregarded in a particular case. First, "the presumption is generally not applied where the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States." *Environmental Defense Fund, Inc. v. Massey,* 986 F.2d 528, 531 (D.C. Cir. 1993) (*citing Steele v. Bulova Watch Co.,* 344 U.S. 280, 73 S. Ct. 252, 97 L. Ed. 319 (1952)). Second, the presumption against extraterritoriality is not applicable when the regulated conduct is "intended to, and results in, substantial effects within the United States" *Laker Airways, Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 925 (D.C. Cir. 1984).

Applying this analysis to the instant case, the district court was entirely correct in upholding the bankruptcy court's order and giving effect to the section 524 discharge injunction.

The district court properly concluded that as to actions against the bankruptcy estate, Congress clearly intended extraterritorial application of the Bankruptcy Code. The filing of a bankruptcy petition under 11 U.S.C. §§ 301, 302 or 303 creates a bankruptcy estate. 11 U.S.C. § 541(a). With certain exceptions, the estate is comprised of the debtor's legal or equitable interests in property *"wherever located and by whomever held." Id.* (emphasis supplied). The district court in which the bankruptcy case is commenced obtains exclusive *in rem* jurisdiction over all of the property in the estate. 28 U.S.C. § 1334(e); *Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.,* 700 F.2d 1279, 1282 (9th Cir. 1983)(interpreting 28 U.S.C. § 1471, the statutory precursor to 28 U.S.C. § 1334(e)). The court's exercise of "custody" over the debtor's property, via its exercise of *in rem* jurisdiction, essentially creates a fiction that the property – regardless of actual location – is legally located within the jurisdictional boundaries of the district in which

the court sits. *See Katchen v. Landy,* 382 U.S. 323, 327, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)(noting that bankruptcy courts have "constructive possession" over estate property) (internal quotation marks and citations omitted); *Commodity Futures,* 700 F.2d at 1282 (noting that under the bankruptcy code, "all property of the debtor, wherever located, is in *custodia legis* of the bankruptcy court."). This includes property outside the territorial jurisdiction of the United States. *See Stegeman,* 425 F.2d at 986 (construing extraterritorial jurisdictional reach of prior Bankruptcy Act); *see also Underwood v. Hilliard (In re Rimsat, Ltd.),* 98 F.3d 956, 961 (7th Cir. 1996).

Given this clear expression of intent by Congress in the express language of the Bankruptcy Code, we conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate. Although Hong Kong-Shanghai concedes this point, it questions whether such an extraterritorial application may operate to enjoin a foreign proceeding. As a matter of general principle, protection of *in rem* or *quasi in rem* jurisdiction is a sufficient basis for a court to restrain another court's proceedings. *Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964). In such cases, "the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Id.* This rationale extends to foreign proceedings. *See Seattle Totems Hockey Club v. National Hockey League,* 652 F.2d 852, 855 (9th Cir. 1981); *see also Gau Shan Co. v. Bankers Trust Co.,* 956 F.2d 1349, 1356 (6th Cir. 1992); *China Trade & Develop. Corp., v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir. 1987).

In the bankruptcy context, the Seventh Circuit has expressly held that protection of the bankruptcy court's *in rem* jurisdiction over estate property allows an international proceeding to be enjoined pursuant to the automatic stay in 11 U.S.C. § 362. *Underwood,* 98 F.3d at 961. As Chief Judge Posner explained: "The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located...." *Id.*

As applied to the concept of *in rem* bankruptcy jurisdiction, there is no functional difference between the automatic stay imposed by 11

U.S.C. § 362 upon the commencement of a bankruptcy and the injunction prohibiting collection actions against the bankruptcy estate provided in 11 U.S.C. § 524(a)(3). Each stay operates to protect the estate and the *in rem* jurisdiction of the bankruptcy court. Accordingly, we join the Seventh Circuit's logic and hold that a bankruptcy court may validly exercise its *in rem* jurisdiction to protect estate property wherever the property is located in issuing a discharge injunction under 11 U.S.C. § 524. Thus, the district court correctly held in this case that the 11 U.S.C. § 524 discharge enjoined Hong Kong-Shanghai from commencing collection against any bankruptcy estate property regardless of its geographic location.

*Simon,* 153 F.3d at 995-96.

According to Section 541(a) of the Bankruptcy Code[2] property of the

---

[2]Section 541(a) provides, as follows:

## § 541. Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is–

(A) under the sole, equal, or joint management and control of the debtor;  or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date–

(A) by bequest, devise, or inheritance;

bankruptcy estate includes every interest of a debtor in property "wherever located and by whomever held." In *Nakash v. Zur (In re Nakash),* 190 B.R. 763 (Bankr. S.D.N.Y. 1996), this provision was held to indicate congressional intent that the automatic stay provisions of Section 362 of the Code be given extraterritorial application to protect a debtor from the filing of an insolvency proceeding against it in Israel.

In the case of *In re Dow Corning Corp.,* 287 B.R. 396 (E.D. Mich. 2002), a confirmed Chapter 11 plan was given extraterritorial effect based upon the following analysis:

> [G]enerally, there is a presumption against extraterritorial application of United States law as argued by the Australian Claimants. However, in the bankruptcy context, that presumption does not apply if ignoring the bankruptcy court orders would have "substantial effects within the United States." *In re Simon,* 153 F.3d 991, 997 (9th Cir. 1998). As noted

---

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a).

13

previously, Dow Australia is contributing cash and insurance assets to the Joint Plan and Dow Australia has filed a contribution claim against the Debtor. If the Australian Claimants were allowed to pursue their claims against Dow Australia, the Debtor would lose Dow Australia's contribution and would also have to defend its products in the Australian courts.

It is noted that the Australian Claimants have submitted themselves to this Court's jurisdiction by participating in this bankruptcy action. When a creditor submits to bankruptcy court jurisdiction by filing a proof of claim in order to collect its debt, the creditor is subject to the court's orders and any discharge order pursuant to 11 U.S.C. §524. *Id.* at 997. International comity does not prohibit an injunction issued by the bankruptcy court. *Id.* at 997-98. It is noted that the Bankruptcy Code extends the bankruptcy court's power over the debtor's legal and equitable interests in property "wherever located." *Id.* at 998; 11 U.S.C. §541. The bankruptcy was initiated in the United States and the Australian Claimants participated in the action. It is noted that the release and injunction provisions [of the Joint Plan] do not apply to the Australian courts but to the participants in the bankruptcy proceedings, specifically, the Debtor, Dow Australia and the Australian Claimants. The discharge provision of the Bankruptcy Code, 11 U.S.C. §524, does not apply to courts outside of the United States but to those creditors who enjoyed the benefits of participating in the United States bankruptcy. *In re Simon,* 153 F.3d at 999. The release and injunction provisions in this case do not conflict with the sovereignty of the Australian courts since those provisions do not apply to the Australian courts but to those who participated in the bankruptcy action, such as the Australian Claimants. It is further noted that there is no competing bankruptcy proceeding in Australia at this time, therefore, there is no conflict regarding the bankruptcy laws at issue. The Australian Claimants are therefore bound by the Court's orders because they participated in the bankruptcy action.

\*          \*          \*          \*          \*

Without a release and injunction, the Shareholders would not have agreed to a plan at the funding level of the current Plan or one that

involved the Shareholders' rights to hundreds of millions of dollars of insurance proceeds. . . The Debtor, alone, would have been unable to fund the Plan at its current level without the insurance proceeds and would have had to stay in bankruptcy. The Shareholders and the subsidiaries/affiliates would each have potential contribution and indemnity claims against the Debtor if litigation over the Debtor's products were asserted against the non-debtors and would have no interest in relinquishing any right to the insurance. As noted by the Bankruptcy Court and the Sixth Circuit, claims for indemnification and contribution would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and proceed with reorganization. *See, In re Dow Corning Corp.,* 244 B.R. 721, 745 (Bankr. E.D. Mich. 1999); *In re Dow Corning Corp.,* 86 F.3d at 494.

The Debtor has consistently maintained that the main reason the Debtor filed for bankruptcy was because of the thousands of pending lawsuits against it claiming its silicone gel products caused injury and disease. The Joint Plan submitted by the Debtor and the Tort Claimants' Committee was to resolve the pending litigation against the Debtor, its Shareholders and its subsidiaries and affiliates. . . The injunction and release provisions are essential to the Joint Plan and to both the consenting and non-consenting creditors.

*Dow Corning*, 287 B.R. at 411-13.

The fallacy of the defendants' arguments is clear when one examines the cases.

In *Interbulk Ltd. v. Louis Dreyfus Corp. (In re Interbulk, Ltd.),* 240 B.R. 195 (Bankr. S.D.N.Y. 1999), Chief Judge Tina Brozman distinguished her opinion in *Maxwell,* 170 B.R. 800 (Bankr. S.D. N.Y. 1994), holding that Section 547 might be invoked to address a transfer in the form of an attachment obtained against an American debtor by

an American corporation in a foreign court, and stated that such a transfer was not

extraterritorial:

> . . .What Dreyfus fails to realize is that there are critical distinctions
> between the facts of Maxwell and those present here.
>
> In *Maxwell,* there were parallel bankruptcy proceedings in England
> and the United States for the debtor, an English corporation. *See Maxwell,*
> 186 B.R. 807, 813 (S.D.N.Y. 1995). The joint administrators appointed
> by the high court in London and the examiner appointed by this court
> entered into a procedural protocol (the "Protocol") to coordinate their
> efforts to administer the two cases as a single estate. *Id.* The Protocol
> provided for the creation of a single pool of assets in which creditors from
> both countries could share by filing claims in either jurisdiction. *Id.*
> Three foreign (to the United States) creditors (the "Creditors") had
> received transfers overseas from the debtor within 90 days of the debtor's
> bankruptcy filings. *Id.* All three filed claims in England, but not here.
> Cognizant that the administrators contemplated suit in the United States
> to recover the preferences from them, the Creditors sought unsuccessfully,
> in England, to enjoin the administrators from commencing suit under
> section 547 of the Code. The administrators then filed adversary
> complaints in this court to recover the transfers from the Creditors. *Id.* at
> 814. The Creditors promptly moved for dismissal, pursuant to Fed. R.
> Civ. P. 12(b)(6), for failure to state a claim upon which relief could be
> granted. *Id.* The Creditors argued that the transfers were extraterritorial
> in nature and considerations of comity prevented the use of section 547
> to avoid them. *Id.* I concluded that section 547 was not meant by
> Congress to apply extraterritorially and that inasmuch as the center of
> gravity of these transfers was indeed extraterritorial, they could not be
> avoided. I alternatively concluded that principles of international comity
> dictated that the avoidance actions had to be dismissed. Whereas my
> decision was affirmed on both grounds in the district court, in the further
> appeal to the circuit court, only the alternative holding was reached and
> my decision was affirmed on that ground alone. The circuit court did not
> rule on the question of first impression – whether the U.S. preference laws
> are extraterritorial in their reach.

16

*Interbulk,* 240 B.R. 195, 198-199.

*Grandote Country Club*, 252 F.3d 1146 (10th Cir. 2001), another case cited by the defendants, is equally inapposite to the facts of the instant case as was *Maxwell*. *Grandote* was a choice of law decision which, like *Maxwell*, involved parallel or duplicate insolvency proceedings pending in this country and overseas. The trustee in a Japanese bankruptcy case brought an ancillary action in this country under Section 304 to avoid the tax sale of a Japanese-owned golf course in Colorado as a fraudulent conveyance. The question raised was whether to apply the law of Japan or of this country to a proceeding brought in this country by a foreign national relating to land located in this country. The bankruptcy, district and circuit courts discounted questions of comity and applied the Colorado Uniform Fraudulent Transfer Act, holding that the tax sale in question did not effect a fraudulent transfer. 252 F.3d at 1150-52.

The instant complaint was brought by the involuntary debtor's bankruptcy trustee in a proceeding filed in this country to determine the rights of the debtor in property located outside of this country which she allegedly transferred to insiders, namely her children, for no consideration and which she failed to disclose to her creditors.

The fact that there is no parallel or duplicative insolvency proceeding now pending in the Bahamas is an important factor in this Court's determination to deny the motion to dismiss. The defendants claim that Bahamian law controls the interest of the

17

debtor in property located there.  However, having conveyed the property to the defendant transferees, it is obvious that considerations of comity with the Bahamas are not implicated here.  Under Bahamian law, the debtor has no further interest in the property conveyed and according to the defendants, the transfer to them cannot be avoided.

This fact, if true, means that granting the motion to dismiss will most certainly result in prejudice to the debtor's American creditors, whose interests are represented here by the trustee.

Professor Jay Lawrence Westbrook, Benno C. Schmidt Chair of Business Law at the University of Texas School of Law, who was appointed *amicus curiae* by Chief Judge Brozman in the *Maxwell* case, rendered his opinion regarding the proper choice of law to be applied in such a straight-forward case as the instant one:

> . . .In a case like *Maxwell,* a particularized choice-of-law analysis may be unavoidable.  In most transnational cases, however, the home country of the debtor-transferor of an alleged preference will be beyond serious argument.  I continue to believe application of a home-country rule in those cases makes the most sense.

Jay Lawrence Westbrook, *The Lessons of Maxwell Communication,*  Fordham Law Review, May 1996, 2531, 2541.

Regardless of the fact that the land in question is located in the Bahamas, it is property of the estate within the subject matter jurisdiction of this Court pursuant to

18

Section 541(a).  This Court enjoys primary jurisdiction over the subject property because there is no competing insolvency proceeding involving the debtor now pending in the Bahama Islands.  *Cf. Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.,* 310 F.3d 118 (3d Cir. 2002)(U.S. Bankruptcy Court erroneously entered "anti-suit" injunction against pending Belgian insolvency proceeding according to the *Maxwell* analysis); and *Official Committee of Unsecured Creditors v. Transpacific Corp. Ltd. (In re Commodore Intern., Ltd.),* 242 B.R. 243 (Bankr. S.D.N.Y. 1999)(Bahamian insolvency proceedings were given deference under the principle of comity, where a competing insolvency proceeding was pending in the Bahamas).

This Court has personal jurisdiction as well over the parties, including the defendants, both of whom are domiciliaries of the United States who were properly served.  As the debtor's children, the defendant-transferees are insiders of the debtor. This matter is a core proceeding over which this Court is exercising *in rem* jurisdiction. 28 U.S.C. § 157(b)(2)(F) and (H).

For all these reasons, the defendants' motion to dismiss will be DENIED.

ORDER ACCORDINGLY.

19

Cc;    Orbie R. Shively, Esquire
       George W. Liebmann, Esquire
       Liebmann and Shively
       8 W. Hamilton Street
       Baltimore, MD 21201
       Counsel to the Chapter 7 Trustee

       George W. Liebmann, Esquire
       Liebmann and Shively
       8 W. Hamilton Street
       Baltimore, Maryland  21201
       Plaintiff and Chapter 7 Trustee

       Stanton J. Levinson, Esquire
       P.O. Box 1746
       Silver Spring, Maryland  20915
       Counsel for the Defendants

       Randy Lee French
       20957 Nanticoke Road
       Bivale, Maryland  21814

       Donna Marie Shaka
       11322 Magnolia Place
       Smithfield, Virginia 23430

       Betty Irene French
       3999 Greenhill Church Road
       Quantico, Maryland  21856