```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
```

In re: BETTY I. FRENCH         *   Case No. 01-6-3163-JS
                               *
                               *
*   *   *   *   *   *   *   *   *   *   *   *   *   *   *
                               *
RANDY LEE FRENCH et al.        *
                               *
v.                             *   Civil Action No. WMN-04-1947
                               *
GEORGE LIEBMANN, TRUSTEE       *
                               *

## MEMORANDUM

This is an appeal from a Bankruptcy Court decision under Section 548 of the Bankruptcy Code[1] which avoided as fraudulent the transfer of certain real property located in the Bahamas. The underlying facts are largely uncontested. At issue is the permissible extraterritorial reach of Section 548. Apparently, no other federal court has addressed this specific issue in a reported decision, aside from the decision of Bankruptcy Judge James F. Schneider in this action, Liebmann v. French, 303 B.R. 774 (Bankr. D. Md. 2003).

The facts underlying Judge Schneider's decision follow. The Debtor, Betty I. French, acquired the property in question in November 1976. The Debtor asserts, and this Court accepts for the purposes of this appeal, that she gifted the deed to the real property to her children, Appellants Randy Lee French

---

[1] 11 U.S.C. § 548.

and Danna Marie French, on December 25, 1981, as a Christmas present.  According to Appellants, the Debtor presented this gift to them in Maryland.  The deed was not immediately recorded, however.  Appellants assert that substantial Bahamian recording taxes made it undesirable to do so at the time, and that it was their understanding that, under Bahamian law, the transfer was complete, valid, and final upon the delivery of the deed.

In the late 1990s, Appellants' father, Elwood Dean French, began to experience serious financial difficulties.  Appellants assert that in response to their father's deteriorating financial condition they determined to record the deed in the Bahamas so that "their ownership of the property would not be adversely affected somehow by Mr. French's financial difficulties."  Appellants' Brief at 6.  Appellants hired a Bahamian lawyer for that purpose and on June 21, 2000, the deed was duly recorded among the land records of the Bahamas Registrar General.

On October 20, 2000, a creditor filed an involuntary Chapter 7 bankruptcy petition against Appellants' mother.  On August 22, 2002, Appellee, as Trustee for the Chapter 7 estate, filed an adversary action under Sections 548 and 550 of the Code to avoid the pre-petition transfer of the Bahamian property and to recover that property or its fair market value

for the benefit of the estate. The Trustee alleged that the property was transferred for no consideration, within 12 months of the filing of the bankruptcy petition, and at a time that the Debtor was insolvent and thus, was constructively fraudulent under Section 548(a)(1)(B).[2] In the alternative, the Trustee asserted that the transfer was made with the actual intent to defraud the Debtor's creditors and thus, could be avoided under Section 548(a)(1)(A).[3]

With the Complaint, the Trustee filed a motion for a temporary restraining order, preventing Appellants from transferring or encumbering the Bahamian property for a period of ten days. The Bankruptcy Court granted that motion and later issued a preliminary injunction prohibiting the same.

Appellants moved to dismiss the Trustee's claim on three grounds. First, Appellants argued that the transfer took

---

[2] Section 548(a)(1)(B) provides that the trustee can avoid any transfer of an interest of the debtor in property that was made within one year prior to the filing of the petition if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer."

[3] Section 548(a)(1)(A) provides that the trustee can avoid any transfer of an interest of the debtor in property that was made within one year prior to the filing of the petition if the debtor made such a transfer "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . ., indebted."

place in 1981 when the deed was gifted to them, regardless of when it was recorded.  Second, Appellants asserted that the "presumption against extraterritoriality" barred the application of Section 548 to transfers of real property located outside of the United States.  Appellants' third argument was that under principles of "international comity," the Bankruptcy Court should refrain from applying Sections 548 and 550 extraterritorially in this case.  The Bankruptcy Court denied the motion, finding that the argument that the transfer actually occurred in 1981 involved a factual dispute inappropriate for resolution on a motion to dismiss.  After reviewing decisions of numerous other courts upholding the extraterritorial application of other provisions of the Bankruptcy Code, the Bankruptcy Court held that neither the presumption against extraterritoriality nor the doctrine of international comity warranted dismissal under the facts presented.

   Shortly thereafter, the Trustee filed a motion for summary judgment.  After a hearing, the Bankruptcy Judge granted the motion as to the Trustee's claim of constructively fraudulent transfer.  The Court found that under Section 548(d)(1) of the Bankruptcy Code, the transfer of the property

occurred in June of 2000.[4]  Because there was no dispute that the conveyance was a gift without consideration, and that the Debtor was insolvent at that time, the Bankruptcy Court determined that the conditions for avoidance under Section 548(a)(1)(B) had been met.  Because the transfer could be avoided under Section 548(a)(1)(B), the Bankruptcy Court did not reach the merits of Trustee's claim of intentional fraud under Section 548(a)(1)(A).

In this appeal, Appellants contend that the Bankruptcy Court erred in refusing to dismiss the avoidance action under the presumption against extraterritoriality and/or the doctrine of international comity.  Because the applicability of the presumption against extraterritoriality is a pure question of law, this Court reviews the decision of the Bankruptcy Court as to that issue de novo.  As to whether the Bankruptcy Court should have declined to exercise its jurisdiction over the matter based upon the doctrine of international comity, that question was a matter of that court's discretion which this Court reviews under an abuse of discretion standard.  For the reasons that follow, this Court concludes that the Bankruptcy Court's decision was correct in

---

[4] That section provides that a transfer does not occur until it is perfected against a bona fide purchaser.  Thus, for the purposes of the Bankruptcy Code, the transfer did not take place until the deed was recorded on June 21, 2000.

both regards.

Although it has it roots in some earlier decisions of the Supreme Court,[5] the "presumption against extraterritoriality" was first denominated as such in <u>Equal Employ. Opportunity Commission v. Arabian American Oil Co. (Aramco)</u>, 499 U.S. 244 (1991).[6]  As explained in <u>Aramco</u>, "[i]t is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" <u>Id.</u> at 248(quoting <u>Foley Bros.</u>, 336 U.S. at 285).  This presumption against extraterritorial effect is based on the common-sense notion that Congress is "primarily concerned with domestic conditions" when it legislates.  <u>Foley Bros.</u>, 336 U.S. at 285.  Courts are required to assume that Congress acts with knowledge of this presumption and in <u>Aramco</u>, the Supreme Court instructed that unless there is "'the affirmative intention of the Congress clearly expressed,'" courts must conclude that a federal statute does not apply outside the United States.  <u>Aramco</u>, 499 U.S. at 248 (quoting <u>Benz v.</u>

---

[5] See <u>American Banana v. United Fruit Co.</u>, 213 U.S. 347 (1909); <u>Foley Bros., Inc. v. Filardo</u>, 336 U.S. 281 (1949).

[6] In <u>Aramco</u>, the Court held that Title VII of the Civil Rights Act did not apply to employment activities that took place abroad.

6

Compania Naviera Hidalgo, 353 U.S. 138, 147 (1957)).

While Aramco would seem to require some "clear statement" in the statute itself indicating the congressional intent that the statute be applied extraterritorially, that requirement appears to have been relaxed by the Supreme Court in Smith v. United States, 507 U.S. 197 (1993).[7]  Under Smith, there must only be "clear evidence" of congressional intent to apply the statute extraterritorially.  507 U.S. at 204.  In discerning congressional intent in the statute at issue in Smith, Chief Justice Rehnquist looked to the overall structure of the act, the legislative history, and other non-textual sources.  Id. at 201-03.  In another Supreme Court decision issued shortly after Smith, Sale v. Haitian Centers Council, Inc., 509 U.S. 155 (1993),[8] the Court indicated that it looked at "all available evidence" about the statute in order to discern congressional intent, including the legislative history, the place of the particular provision within the statutory scheme, and the relevance of the statute to the overall body of law of which it was a part, i.e., immigration law.  509 U.S. at 177.

---

[7] In Smith, the Court held that the presumption against extraterritoriality barred an action under the Federal Tort Claims Act based on conduct that took place in Antarctica.

[8] In Sale, the Court invoked the presumption against extraterritoriality to preclude provisions of the Immigration and Naturalization Act from applying to Haitian refugees apprehended in international waters.

7

Furthermore, lower courts considering the presumption against extraterritoriality have concluded that where congressional intent concerning extraterritorial application cannot be divined courts can examine additional factors to determine whether the presumption should be disregarded in a particular case.  Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon), 153 F.3d 991, 995 (9th Cir. 1998).  First, "the presumption is generally not applied where the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States." Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 531 (D.C. Cir. 1993) (citing Steele v. Bulova Watch Co., 344 U.S. 280 (1952)).  Second, the presumption is not applicable when the regulated conduct is "intended to, and results in, substantial effects within the United States."  Laker Airways, Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 925 (D.C. Cir. 1984).

While prior to Judge Schneider's opinion in this action, no reported decision has applied these principles in the context of Section 548 of the Bankruptcy Code, courts have upheld the extraterritorial application of numerous other Code provisions, as noted by Judge Schneider.  For example, in Simon, the Ninth Circuit concluded that a violation of a

Section 524 discharge injunction by a foreign creditor outside the United States was sanctionable by a United States Bankruptcy Court. 153 F.3d at 995-96. In <u>Nakash v. Zur (In Re Nakash)</u>, 190 B.R. 763 (Bankr. S.D.N.Y. 1996), the court held that the automatic stay of Section 362 should be given extraterritorial application so as to protect a debtor from a receiver's filing of an insolvency proceeding against it in Israel. In <u>In re Dow Corning Corp.</u>, 287 B.R. 396 (E.D. Mich. 2002), the district court held that the Code's prohibition of post-confirmation litigation against a reorganized debtor applied equally to litigation initiated abroad.

The fundamental framework of the Bankruptcy Code compels these results. As the Seventh Circuit noted in upholding the application of the Code's automatic stay provision to halt an action instituted by the receiver of a debtor in the Federation of St. Kitts and Nevis, "the efficacy of the bankruptcy proceeding depends on the [bankruptcy] court's ability to control and marshal the assets of the debtor wherever located." <u>Underwood v. Hilliard (In re Rimsat, Ltd.)</u>, 98 F.3d 956, 961 (7th Cir. 1996). This ability is specifically provided for in the Code's delineation of the scope of the debtor's estate: "the estate is comprised of the debtor's legal or equitable interests in property '<u>wherever</u>

9

located and by whomever held.'" In re Simon, 153 F.3d 996 (quoting 11 U.S.C. § 541(a), emphasis supplied in Simon).  As commentators have aptly observed, "the Bankruptcy Code was drafted with the realization that the Code's key provisions would be applied extraterritorially when needed to effectuate its principal goals of asset preservation and equitable distribution of the same to holders of allowed claims."  David M. Green and Walter Benzija, "Spanning the Globe: The Intended Extraterritorial Reach of the Bankruptcy Code," 10 Am. Bankr. Inst. L. Rev. 85, 93 (Spring, 2002).

In this action, a Maryland debtor gave a deed to her son and daughter residing in Maryland and Virginia, respectively.  The gift, according to Appellants, was made in Maryland.  There is no dispute that had the deed related to real property located within the borders of the United States, the Bankruptcy Court could properly avoid the gift and return the property to the Debtor's estate for the benefit of the creditors.  Given the clear congressional intent expressed in the Bankruptcy Code that property of a debtor be treated the same whether located here or abroad, the Court can find no principled reason to reach a different result as to property subject to a pre-petition transfer avoidance action.  The identical concerns for marshaling and equitably distributing

assets for the benefit of creditors are implicated.

In a law review article that this Court finds particularly enlightening, the bankruptcy court's decision in Maxwell received some criticism.  See Suzanne Harrison, "The Extraterritoriality of the Bankruptcy Code: Will the Borders Contain the Code?," 12 Bankr. Dev. J. 809 (1996).  That article, written before the Second Circuit issued its decision, anticipated the result on appeal and suggested that

Here, as they did before the Bankruptcy Court, Appellants rely heavily on a series of decisions related to the extraterritorial application of the Code's preferential transfer provision in Section 547.  See In re Maxwell Communications Corp., 170 B.R. 800 (Bankr. S.D.N.Y. 1994), aff'd, 186 B.R. 807 (S.D.N.Y. 1995), aff'd, 93 F.3d 1036 (2nd Cir. 1996).  In that action, Bankruptcy Judge Tina Brozman concluded that Congress did not intend for Section 547 to be applied extraterritorially.  As an alternative holding, she concluded that the avoidance actions before her should be dismissed under principles of international comity.  The district court affirmed on both grounds.  The Second Circuit, however, did not reach the question as to whether the Code's preference provisions could be applied extraterritorially, affirming instead only on the comity ground.

11

the lower courts should have limited their consideration to the issue of comity.  Id. at 843.  The author suggested, and this Court agrees, that lower courts' presumption of extraterritoriality analysis would have benefitted from examining congressional intent in the context of the Code as a whole instead of the specific provision in isolation.  Courts should "interpret each section in such a fashion as 'to preserve an overall sense and design, in light of the policies sought to be achieved.'" Id. at 831 (quoting Hill v. Spencer Savings & Loan Ass'n (In Re Bevill), 83 B.R. 880, 887-88 (D.N.J. 1988)).

In a subsequent decision, Judge Brozman limited her earlier holding in Maxwell.  See Interbulk Ltd. v. Louis Dreyfus Corp. (In re Interbulk, Ltd.), 240 B.R. 195 (Bankr. S.D.N.Y. 1999).  In Interbulk, a chapter 11 trustee sought to avoid, under Section 547, an attachment that a creditor had obtained from a French court a few weeks before the debtor filed its bankruptcy petition.  When the creditor attempted to rely on the series of decisions in Maxwell "as the linchpin for its argument that there is a presumption against the extraterritorial application of United States preference laws," Judge Brozman responded:

> What [the creditor] fails to realize is that there are critical distinctions

12

between the facts of <u>Maxwell</u> and those present here.

In <u>Maxwell</u>, there were parallel bankruptcy proceedings in England and the United States for the debtor, an English corporation. The joint administrators appointed by the high court in London and the examiner appointed by this court entered into a procedural protocol (the "Protocol") to coordinate their efforts to administer the two cases as a single estate. The Protocol provided for the creation of a single pool of assets in which creditors from both countries could share by filing claims in either jurisdiction. Three foreign (to the United States) creditors (the "Creditors") had received transfers overseas from the debtor within 90 days of the debtor's bankruptcy filings. All three filed claims in England, but not here. Cognizant that the administrators contemplated suit in the United States to recover the preferences from them, the Creditors sought unsuccessfully, in England, to enjoin the administrators from commencing suit under section 547 of the Code. The administrators then filed adversary complaints in this court to recover the transfers from the Creditors. The Creditors promptly moved for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted. The Creditors argued that the transfers were extraterritorial in nature and considerations of comity prevented the use of section 547 to avoid them. I concluded that section 547 was not meant by Congress to apply extraterritorially and that inasmuch as the center of gravity of these transfers was indeed extraterritorial, they could not be avoided. I alternatively concluded that principles of international comity dictated tht the avoidance actions had to be dismissed.

13

Interbulk, 240 B.R. at 198-99.

Like Interbulk, the instant case is readily distinguishable from Maxwell on its facts. Here, there is no international aspect to the transaction at issue other than the happenstance that the property represented by the deed is in the Bahamas. To the extent that this Court's conclusion is at odds with the legal conclusion of the lower courts in Maxwell, this Court respectfully disagrees with those holdings.

Aside from their reliance on the Maxwell decisions, Appellants' primary argument for the conclusion that Judge Schneider erred is premised on the observation that Bahamas property was not actually property of the estate until after the transfer was avoided. Appellants note that several of the cases relied upon by the court below that applied the Bankruptcy Code extraterritorially did so under the legal fiction that, because bankruptcy court's have constructive possession over estate property, the foreign property is "legally" located within the jurisdictional boundaries of the court, regardless of its actual location. See, e.g., Simon, 153 F.3d at 996. By constructively locating the foreign property within domestic borders, a court can avoid directly confronting the presumption against extraterritoriality.

14

Appellants are correct that Judge Schneider appears to have based his decision, at least in part, on a finding that the Bahamas property was property of the estate.  See 303 B.R. at 783 ("Regardless of the fact that the land in question is located in the Bahamas, it is property of the estate within the subject matter jurisdiction of this Court pursuant to Section 541(a).").  Appellants are also correct that this conclusion would be at odds with a substantial body of case law, including a decision of Judge Schneider, that holds that property recovered by the trustee pursuant to his avoidance powers is not property of the estate until it is actually recovered.  See In re Murray, 214 B.R. 271 (Bankr. D. Mass. 1997); In re Yellow Cab Co-op. Ass'n, 178 B.R. 265 (Bankr. D. Colo. 1995); In re Saunders, 101 B.R. 303 (Bankr. N. D. Fla. 1989); see also Allnutt v. Friedman (In Re Allnutt), 1995 U.S. Dist. Lexis 4870 (D. Md. 1995) (affirming decision of Judge Schneider).  The conclusion that the real property was not property of the estate, however, does not alter this Court's conclusion as to the non-applicability of the presumption.  Confronting the presumption head on, this Court finds that "all available evidence" demonstrates that Congress did intend for the key provisions of the Bankruptcy Code to be applied extraterritorially for the reasons stated above.

In the alternative, even if one concluded that the evidence of congressional intent was less than compelling, the Court finds that the so-called Massey exceptions referenced above would compel the Court to disregard the presumption in this instance. Allowing a debtor to defraud creditors, whether constructively or intentionally, by giving away significant foreign assets to family members, would undoubtedly "result in adverse effects within the United States." Massey, 986 F.2d at 531. In the context of increasing globalization, to not apply Section 548 extraterritorially would provide the potential to deprive creditors of significant assets merely on the happenstance that they had been cached overseas.

Turning to Appellants' argument based on principles of "international comity," this Court finds even less support. International comity is defined as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895). International comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and

16

good will, upon the other." Id. at 163. Appellants acknowledge that comity is typically invoked where there are competing proceedings in two countries and further acknowledge that, in this instance, there are no legal proceedings in the Bahamas that would conflict with the bankruptcy action here.

Instead, Appellants rely on a second aspect of international comity that was laid out by Justice Scalia in a dissenting opinion in Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993), one that does not arise out of conflicting proceedings. As summarized by Justice Scalia, this principle provides that "a nation having some 'basis' for jurisdiction to prescribe law should nonetheless refrain from exercising that jurisdiction 'with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable.'" Id. at 818 (quoting Restatement (Third) of Foreign Relations Law of the United States § 403(1)). Whether the exercise of jurisdiction in a specific context is reasonable turns on a number of factors including, inter alia:

> the extent to which the activity takes place within the territory [of the regulating state],
>
> the connections, such as nationality, residence, or economic activity, between

>    the regulating state and the person
>    principally responsible for the activity to
>    be regulated,
>
>        the character of the activity to be
>    regulated,
>
>        the importance of regulation to the
>    regulating state,
>
>        the extent to which other states
>    regulate such activities, and the degree to
>    which the desirability of such regulation
>    is generally accepted,
>
>        the extent to which another state may
>    have an interest in regulating the
>    activity, and
>
>        the likelihood of conflict with
>    regulation by another state.

Id., 509 U.S. at 818-19 (citations omitted).  Furthermore, in discussing international comity in the context of a bankruptcy action, the Ninth Circuit in Simon has added, "[i]f any philosophy can be attributed to the structure of the Code it is that of deference to the country where the primary insolvency proceeding is located, including the United States if the plenary proceeding is located here, and flexible cooperation in the administration of assets."  Simon, 153 F.3d at 998.

   The activity at issue here is the transfer of property. While the property transferred may be located in the Bahamas, the transfer took place in Maryland.  The only individuals

18

with any relationship to, interest in, or potential interest in the property - the debtor, the trustee, the Appellants, and the creditors - are all residents of the United States.  No Bahamian individual or entity has any stake in the determination of ownership in the property.  Under these circumstances, the Bankruptcy Court did not err in finding international comity concerns insufficient to compel it to withhold action.

    Accordingly, the decision of the Bankruptcy Court will be affirmed.  A separate order will issue.


                                                                              /s/
                                          William M. Nickerson
                                        Senior United States District Judge


Dated: December , 2004

20